·CALEDONIA HUNTER *v.* G. W; GARDENHIRE, *et al.*

1. LOST WILL. *Proof to set up.* To set up a lost will of realty requires the clearest and most satisfactory evidence of two unexceptionable witnesses.

2. COLLUSIVE LITIGATION. Where complainant and certain defendants collude to defeat another defendant in litigation, and the other defendant is discharged for want of proof, neither of the colluding parties is entitled to demand a decree against the other because of admissions made in aid of their scheme. The court in its discretion decrees a dismissal of the bill, and taxes all the colluding parties jointly with costs.

―――――

FROM HAMILTON.

―――――

Appeal from the Chancery Court at Chattanooga W. M. BRADFORD, Ch.

CLIFT & BATES and J. A. MINNIS for complainant.

DEWITT & SHEPHERD and KEY, RICHMOND & CLARK for defendants.

INGERSOLL, Sp. J., delivered the opinion of the court.

This bill is by a young woman of twenty-three years to set up the will of her grandfather, William Gardenhire, alleged to have been suppressed or destroyed by her uncles, defendants, more than forty years ago, and to assert thereunder her title in remainder to an undivided interest in valuable real estate in and near the city of Chattanooga, owned and held by numerous defendants under deed of conveyance in fee from the heirs of her said grandfather, and to have said clouds removed from her title; or, if not entitled to this relief against the purchasers, then she prays for a judgment against her said uncles for the value of her share in said lands.

The present owners of the land demurred, and the chancellor allowed their demurrers. Two of the uncles, both insolvent, one of them a shrewd schemer called "Judge," who contracted for one-third of complainant's anticipated recovery in this case for the consideration of proof to be furnished by him, and the other called "Doc," an octogenarian, who, after a long, rambling life, had returned to Tennessee from Illinois, "bringing nothing with him and leaving nothing behind," and is living around with his kinfolks, and particularly with "Judge," join in an answer, prepared for them by complainant's solicitors without fee or even

the promise thereof from them, wherein they admit the due execution of the will by their father and the devise of all the testator's realty to complainant's mother for life, with remainder-over to her children, if she should be married and have any; and "Judge" confesses that he participated· in the suppression and spoilation of the will, whereby his sister was defrauded of her land, and his father's mulatto children of their freedom.

The other brother, G. W. Gardenhire, the principal defendant, out of whom complainant and her champertor uncle expected to make their money, answered on oath denying generally and particularly all the material allegations of complainant's bill, on which her right to relief must rest.

A large volume of proof was taken on both sides. On the hearing the chancellor declared the equities of the bill met and denied by the answer of G. W. Gardenhire and not sustained by proof, and dismissed the bill entirely, not even allowing complainant decree against her uncles, "Judge" and "Doc," who expressly confessed all the facts, and law, too, on which she based her claim. She appealed.

The Referees recommend affirmance and complainant excepts.

The first objection to the decree and report is that the chancellor forced complainant to trial over an application for continuance based on affidavits. The Referees, on examination of the affidavits, pronounce them insufficient to require a continuance, and report that the refusal thereof by the chancellor does not call for reversal. We concur in the conclusion of the

Referees on this point, not, however, for the reason assigned of the insufficiency of the affidavits, but for the more satisfactory cause, that it does not appear from the record that they were ever presented to the chancellor, or that a continuance was ever asked by or refused to complainant.

The other exceptions may all be gathered and considered together under the sixth, and this treated as a sufficiently specific exception to the finding and report, "that the complainant has failed to make out her case, and that William Gardenhire left no will, as described in the bill," to open the entire case. This presents solely a question of fact; and the contention is to be decided by the weight of proof. For, though complainant's mother is still alive, and complainant therefore not entitled to recover possession of the land; yet, if she is the devisee in remainder, and third parties under conveyance from the life-tenant and from others, are claiming and holding the land, she may have these clouds removed; and if her muniment of title has been fraudulently suppressed and destroyed by others, who have thereupon claimed and sold the land as their own, by means of which suppression of title and sale of land she has lost title thereto, the spoliators must account to her for the value of that of which their fraud has deprived her.

Geo. W. Gardenhire not only answers on oath, denying all charges of fraud and spoliation by him, and even the execution of any valid will, particularly one giving any title to complainant, but he fortifies his answer by proof of his good character by credible

witnesses, Judge Key, deposing on an acquaintance of thirty years, that he is "as honest and honorable in his dealings and contracts as any one he ever knew, and that that was his character with those who had dealt most with him." Complainant, to obtain a decree, must show not only that her grandfather left a valid will, but also that she was a devisee in remainder thereunder; for, it is plain she can have nothing in virtue merely of the alleged devise to her mother in fee. To prove this, she must not only comply with the general rule of evidence in equity requiring the sworn answer to be overcome by two credible witnesses, or the equivalents thereof, but she must also raise her proof to the standard required by the well established rule applicable to cases of this character, wherein it is sought to set up a lost or suppressed will.

As stated by Swinburne, the rule is: "If a testament be made in writing, and afterwards lost by some casualty, if there be two unexceptionable witnesses, who did see and read the testament written, and do remember the contents thereof, these two witnesses deposing to the tenor of the will are sufficient; and Williams on Executors, p. 209, adds that the contents or substance of a lost will may be established upon satisfactory proof that it was duly made and not revoked by the testator; "but when allegations of this sort are made, they must be supported by the clearest and most stringent evidence." This rule of evidence has been approved and applied by this court in *Buchanan* v. *Matlock*, 8 Hum., 389, and other cases. Has complainant by the clearest and most stringent

evidence of two unexceptionable witnesses, who saw and read the will and remember the contents thereof, overcome the answer of defendant, Geo. W. Gardenhire, with proof that she was a devisee in remainder under a valid will of William Gardenhire?

If the question were only whether the old man had made a will, it might be open for argument; indeed it may be conceded for the purpose of the present case that he did make one, freeing his slaves, and giving the rest of his estate to his daughter, Susan. But the only witness who deposes that the children of Susan Gardenhire, mother of complainant, were to have remainder-over after Susan, is Jas. T., *alias* " Judge" Gardenhire; and he is anything but un - exceptionable as a witness.

Impeached by a score of credible witnesses, distrusted even by his friends where he has interest, confessing at last, after repeated denials, that he had been interested as a champertor in the suit, indulging in prevarications and evasions, and when detected and exposed, offering frivolous and incredible excuses for his quibbles and untruths, he appears in the record as a most exceptionable and untrustworthy witness, hardly able to sustain an allegation undenied, surely not credible enough to overcome a sworn answer even in the slightest. and most irrelevant matter, much less in matters of moment requiring the clearest and mos stringent proof.

Having failed in the proof against Geo. W. Gardenhire, complainant is therefore entitled to no decree against him. But since he has not appealed nor ex-

cepted to the report of Referees, recommending the affirmance of the chancellor's decree against him for one-half the costs, the same must be affirmed.

A former appeal by complainant from the decree of the chancellor, sustaining the demurrer of the purchasers, was dismissed for prematurity: 10 Lea, 87. No exception being taken here to that action, the decree of dismissal will stand as to the purchasers, without inquiring into the correctness of the holding on the demurrers.

As to defendants, Jas. T. and Matthew Gardenhire, the case presents an interesting question. They have admitted the due execution of a will making complainant a devisee in remainder; and one of them confesses his participation in the alleged combination whereby it was suppressed; both admit her right to the relief she seeks, which is, alternatively, a decree for the value of the estate in remainder, of which she alleges she was deprived by the suppression of the will. But as to defendant Geo. W., the proof fails to establish any right in her under a will.

Yet her right to a recovery must depend upon the establishment of the character of will alleged; and it would not seem consonant with justice for the court to say in one breath there is no will, and the next there is a will. Again, her alleged life estate has not yet fallen in; and the estimation of its value would prove a matter of so great difficulty, that the court ought not to undertake it unless justice demands it. Whether a complainant would be entitled to decree against defendants answering *bona fide* in

Hunter *v.* Gardenhire.

such case as this, or even *mala fide* as in this case, is not free from difficulty. Defendants certainly are estopped by their answer to complain of or resist a decree against them. Perhaps it would be a wholesome lesson to them, and to other defendants embarking in a palpably collusive suit to allow the penalty of a decree, confessed by them to be proper, to be enforced against them, though their confession is probably untrue and made with the hope of gain.

Whether such decree is allowable we do not decide. Complainant and defendants are both insolvents, and this interesting question of law may be of no moment to them. But, as we do not understand complainant as pressing her demand for a decree against her confederate uncles, and as justice does not require it, and none of the parties are before the court with clean hands and in an attitude to demand anything, we are of opinion that the bill should be dismissed also as to defendants, Jas. T. and Matthew Gardenhire, with judgment against all three jointly for all the costs save that adjudged against the other respondent. Decree accordingly.