MOORE et al. v. WILLIAMS et al.—207 S. W. (2d) 590.

Middle Section.   November 1, 1947.

Petition for Certiorari denied by Supreme Court, January 16, 1948.

480

Robert L. Keele, of Manchester, for plaintiffs in error.

J. F. Doty, of Nashville, and Maynard Tipps, of Tulla-homa, for defendants in error.

HOWELL, J.  The bill in this cause was filed to set up and establish the lost or destroyed will of Mrs. Ida Mai Moore, who died in Coffee County, Tennessee, on June 19, 1946.  The complainants are beneficiaries under the alleged will and the defendants are the brothers and sisters of the deceased.  The deceased was the second wife of complainant J. H. Moore and she had no children.  By the alleged will the surviving husband J. H. Moore was given an estate for his life in the property of the deceased and the remainder interests after his death were given to a grandchild and two children of her husband.

The answer denied the execution of any will by Ida

Mai Moore and avers that if any such will was made at any time it was destroyed and revoked by her.

The Chancellor found that a will had been executed by Ida Mai Moore and had not been revoked by her.

The defendants have appealed to this Court and have assigned this action of the Chancellor as error.

In the brief filed with the assignments of error appellants concede that a will was duly executed by the deceased and that the copy set out in the original bill was a true copy of her will, the only question being whether or not this will was revoked by the testator.

The law is well settled. It is fully discussed by Hale, J., in the case of Haven v. Wrinkle, Tenn. App., in 195 S. W. (2d) 787, 794, and Sizer's Pritchard on Wills, (2d) Ed., is quoted with approval as follows:

" 'For the establishment of the will, it is necessary for the complainant to show to the satisfaction of the court:—1st, that the testator made and executed a valid will in accordance with the forms of law, and the death of the testator; 2nd, that the will had not been revoked, and is lost or destroyed, or can not be found after due and proper search; 3rd, the substance and contents of the will.'

"In discussing the second essential, this author says:

" '2. When a will can not be found after the death of the testator, there is a strong presumption that it was destroyed or revoked by the testator himself, and this presumption stands in the place of positive proof. He who seeks to establish a lost or destroyed will, assumes the burden of overcoming this presumption by adequate proof. It is not sufficient for him to show that persons interested to establish intestacy, had an opportunity to destroy the will. He must go further and show by facts

and circumstances that the will was actually fraudulently or accidently lost or destroyed, against and not in accordance with, the wishes and intention of the testator. But the presumption that the will was destroyed by the testator, animo revocandi, may be rebutted, and its loss or destruction by other means may be shown, by circumstantial as well as positive evidence; as, by showing that the testator did not have the custody and control of the instrument after its execution; that he had lost his testamentary capacity for a period before his death, and that the will was in existence at the time the mental alienation occurred, and the like. The declarations of the testator, before or after making the will, are admissible in evidence to support or destroy the presumption of revocation.' Ibid.''

In connection with the revocation of the will the trial Judge found as follows:

''Mrs. Moore, without issue, married Mr. J. H. Moore, in 1904 and died June 19, 1946, living with him for nearly one half a century. When they married Mr. Moore had two children, Harvey (Hal) Moore and Estelle Moore, ages 12 and 14 respectively, by a former wife who died in 1897. While the County Court record, which was read at the hearing, by agreement, reflected that Frank Thomas was adopted by J. G. Moore, for the purpose of name only, without the right to inherit, Mrs. Moore obviously thought that she too had adopted this boy who came to live with them when he was 10 years of age, and she referred to him as 'my son', and to his daughter, Betty Joyce Moore, as 'my granddaughter'. Mrs. Moore helped rear these children, became a mother to them and was undoubtedly fond of Frank, the adopted son, and Betty Joyce, the adopted granddaughter. She had never visited

with her brothers and sisters, except Della Williams, who resided for a period from 1941 to 1945 in a two room apartment of the same dwelling occupied by the testatrix and her husband, in Tullahoma, Tennessee. Pearl Williams, Ed Williams, William H. Williams, Henry Williams and Robert W. Williams resided in foreign States. Except for a casual correspondence and an occasional visit by defendants over a period of years, she was without contact or association with her brothers and sister. Pearl Williams, Della Williams and Wm. H. Williams were the only ones to attend her funeral.

"The relationship is devoid of anything which would cause the Court to think that her brothers and sisters were the objects of her bounty, or that she ever entertained a desire that they should inherit her property. In fact, the record discloses that the relationship was somewhat strained.

"On the contrary, except for the step-son, Hal Moore, who was not included in her will, relation with her family was that of a devoted wife and mother. She and her husband had apparently accumulated together the property bequeathed and devised by the will, except $2,200.00 which she received from her father's estate. The Court is inclined to believe that Mrs. Moore was aware of the consequences of dying intestate; that the real estate devised to her husband for his life time and the remainder interests to her stepdaughter, Estelle, and the boy Frank Moore, whom she was pleased to call 'my son', and the little girl, Betty Joyce, whom she was pleased to call 'my granddaughter', would receive nothing from her estate. The conclusion of this result undoubtedly dictated the making of her will. If so, what is there in the record which leads one to think that she revoked it?

"The laws of human nature are universal. Frank Moore was, for all intents and purposes, the adopted child of Mrs. Ida Mai Moore. Adopted children, human experience teaches, are as close and dear to a foster parent as the off-spring of flesh and blood. His child, 'my granddaughter' enjoyed the same love and devotion on the part of Mrs. Ida Mai Moore that characterizes a normal grandparent. It is inconceivable that this woman who thought of herself as a mother and a grandparent, would have destroyed the very instrument which she had previously made for the purpose of bestowing upon the natural objects of her bounty, all her earthly possessions. To conclude from the record in this case, and to say that she did such an act in order to permit her next of kin, who had become distantly removed in human relationship, to inherit, would be to overturn and render impotent the natural love, affection and devotion of a woman for her husband and children. This the Court is not willing to do.

"At the same time the testatrix made her will, her husband made his will. The proof suggests that they had reached an agreement with respect to the disposition of their property, but the agreement is not relied upon by the complainants in this cause. J. H. Moore executed a will in which he left all of his property to his wife, with almost unlimited authority to use it as she wished. The residue, he directed, should go to his three children, including the adopted son, in equal shares, the share of Hal Moore to be in Trust. These wills together with a deed, which they executed that same day, conveying a house and lot in Tullahoma, to the daughter, Estelle Moore Paschal, were placed in an envelope and turned over to the testatrix for safekeeping. Mr. Moore testified

that some two weeks thereafter, he saw these papers in a dresser drawer, in the home, together with some money which his wife was keeping in the home. After his wife died, and after diligent search, Mr. Moore was unable to locate her will, his will, the deed or the money.

"The presumption relied upon by the defendants would necessarily carry more weight but for the fact that not only was the testatrix will found missing but the will of her husband, the deed and the money, which apparently was left by her in the dresser drawer. If the testatrix destroyed her will, why did she destroy her husband's will and the deed? What became of the money? Their unexplained absence are additional circumstances which point to the fact that testatrix did not destroy her will. She undoubtedly realized the purport of her husband's will. Under the terms of it she virtually had the full enjoyment of all his property, if necessary, for her needs, and comforts in life. It was argued on the hearing, without objection, that the testatrix was a much younger woman and the proof shows that she died suddenly. She could reasonably have presumed that she would survive her husband, who was 82 years of age. It is therefore, impossible to believe she destroyed his will. Neither can the Court determine any cause why she should have destroyed the deed conveying property which Mr. J. H. Moore owned in his own right, to his daughter.

"The presumption upon which the defendants rely is further weakened by the character of testatrix custody. Asbury v. Hannum, 8 Higgins, 146, 154.

"It was left in a bureau or dresser drawer, in the home of the testatrix and her husband. It was accessible to anyone bent upon an unlawful mission, and it is not necessary, under the law, for the Court to determine who did

destroy, or make away with these papers, except to find that it was not done by, or at the instance of the testatrix. It suffices to say there were those on both sides of the family, and outside of the family, who had access to and could have destroyed the will in question.

"Under the facts, circumstances and all of the conclusions to be had therefrom, it is impossible for the Court to believe that testatrix destroyed the will, or intended to revoke it. Therefore, the bill is sustained."

■ From a careful reading of the entire record and full consideration of the facts we are of the opinion that the learned Chancellor was fully justified in his finding of facts and conclusions therefrom and we concur therein. Under the facts and circumstances of this case we are satisfied that Ida Mai Moore did not revoke her will. The assignments of error are overruled and the decree of the Chancellor is affirmed.

The appellants and the sureties upon the appeal bond will pay the costs.

Affirmed.

Felts and Hickerson, JJ., concur.