590

BRYAN SANDERS et al., Appellees, v. WILL McCLANAHAN et al., Appellants. —442 S.W.2d 664.

Eastern Section. February 24, 1969.

Certiorari Denied by Supreme Court June 16, 1969.

Reed & Terry, Ralph H. Noe, Jr., Morristown, for appellants.

Taylor, Inman, Tilson & Line, Capps & Oakley, Morristown, for appellees.

PARROTT, J. This is a suit to set up an alleged lost holographic will of Mack A. McClanahan who died without issue at the age of 89 on January 15, 1967. Alex McClanahan, a nephew, Bryan Sanders and Agnes Sanders Cline, nephew and niece of Mack McClanahan's wife who predeceased him in 1951, filed this original bill averring that several years prior to Mack McClanahan's death he executed a holographic will by which he bequeathed and devised his estate to the complainants. The named defendants are the heirs at law of the deceased who would inherit the estate if he died intestate.

From the decree of the chancellor sustaining the original bill and setting up the will, defendants have appealed.

The chancellor in his memorandum opinion gives a clear and detailed statement of the facts which we adopt in part:

"Mack McClanahan lived by himself for several years after his wife's death. Complainant, Alex McClanahan, and his wife, lived near or on Mack McClanahan's farm. From 1959 to November, 1966, Alex and his wife frequently took dinners and suppers to Mack and generally

helped him. Mack grew worse physically, and in November, 1966, moved into Alex' home and stayed there until his death. He was bedridden the last three weeks of his life. Two days after Mack died, a card (a copy of which was filed as Exhibit 1 to the bill of complainant and the original filed at the hearing), was found in the locked glove compartment of Mack's automobile, together with the automobile's certificate of title. The automobile itself and the garage in which the automobile was located were both locked. Another complainant, also a nephew of Mack, Bryan Sanders, was with Alex when the card was found. This card was entirely handwritten and said:

'Nov. 6, 1966. M. A. McClanahan to Alex McClanahan. You check with hale hall he knows about the will it is to you and the Sanders kids You check car title.'

"The certificate of title for M. A. McClanahan's 1960 Model Ford was filed as Exhibit 1 to the testimony of Alex McClanahan. On the back of it was written in handwriting, testified to be that of M. A. McClanahan, the following: 'Alex, this is your car.'

"Complainant introduced the following witnesses who identified the writing on the card and swore that it was that of Mack A. McClanahan:

"Complainant, Alex McClanahan; Complainant, Bryan Sanders; Mrs. Pauline Kenny, a schoolteacher since 1929 and a neighbor of Alex McClanahan; Earnest N. Peoples, 71 years old, a first cousin of McClanahan and close friend; Esquire Hal S. Hale, a neighbor and close friend of Mack McClanahan, and Floyd Peoples, a neighbor and first cousin of Mack McClanahan.

"The defendants who testified were Mrs. W. W. Fullington, the sister of Mack McClanahan; Horace

Fullington, the son of Mrs. W. W. Fullington, and Paul Peoples, 38 years old who had done business with Mack, but none of them testified as to the genuineness of Mack [his handwriting] on the November 6, 1966, card in question.

"The defendants introduced Richard Bowen of Detroit, Michigan, who had been a disputed document examiner for many years and had worked as such in the Police Department in Detroit, Michigan, from 1931 through 1953. He had previously examined, in his laboratory, a letter from Mack McClanahan to Paul Peoples, which was Exhibit 1 to Paul Peoples' testimony, with the November 6, 1966, card introduced by complainant. He had been told that the letter to Paul Peoples was in the handwriting of Mack McClanahan. Calling that the 'known handwriting', he testified that this 'known handwriting' and the November 6, 1966 card were not written by the same person. He stated various reasons, which need not be given here, for his opinion and pointed out differences he observed between the 'known handwriting' and the 'unknown handwriting'. On cross-examination, he testified that he could not examine handwriting on the witness stand and make accurate comparisons there; that he would need to examine the handwritings with the proper laboratory equipment and give his opinion only after careful study. He further stated on cross-examination that if the November 6, 1966, card was written by Mack McClanahan, then the Exhibit 1 to Paul Peoples' testimony was not written by Mack McClanahan. He also testified that one's handwriting has normal variations depending on various things.

"Complainant, Alex McClanahan, testified that when he asked his uncle, Mack McClanahan, about some pay

for the work he had done from time to time on the farm, that Mack replied, 'Well, you will get it all back in a lump sum'; that Mack had talked about not living long; that somebody had to take care of him; that he 'had things fixed' and Alex would be taken care of, but Alex McClanahan never saw the will in question. Alex McClanahan filed as Exhibit 1 to his testimony, the car title and certificate, on which was written, 'Alex, this is your car'.

"According to the evidence, the relatives of Mack, who are defendants in this case, visited him two or three times a year but paid very little attention to him. There is also evidence that Mack McClanahan exhibited no cordiality toward people visiting him, coming inside his home and that probably he kept house in the fashion that an eighty-five year old widower in his circumstances might do.

"After Mack's death and the finding of the card in the automobile, the two complainants, nephews of Mack McClanahan, went to the Probate Judge who told them to 'go find that will'. In the search they went into Mack's home and found things were 'in a mess'. The drawer in the bureau where Mack kept his valuable papers did not contain a will and showed evidence of considerable disarray, as did other parts of the home.

"Various witnesses introduced various checks about which they knew personally and which had on them the signature of Mack McClanahan which they swore was the genuine signature. These signatures were compared with other exhibits.

"Hal S. Hale was called as a witness by complainants. He is 54 years old, a member of the County Court, a

former County Judge of Hamblen County and Assistant General Sessions Judge. He testified that he had known Mack McClanahan all of his life; that they had had many business dealings together; that he knew his handwriting; that they attended the same church and same Sunday School class; that in the Spring of 1956, Mack approached him and showed him a will; and that, at that time, Mack wanted Squire Hal Hale to serve as Executor and at that time, Esquire Hale saw the will which was divided into three paragraphs. He read the first paragraph which was in the handwriting of Mack McClanahan. The first paragraph of the will stated that Alex McClanahan was 'to be taken care of first' and then the estate divided between Bryan Sanders and his. sister, 'Aggie', (Agnes). At another time at Witt's Baptist Cemetery, Mack McClanahan, again showed Esquire Hale a paper which was the same paper mentioned above. Mr. Earnest Peoples was in the vicinity, but the conversation between Esquire Hale and Mack McClanahan was confidential and Earnest Peoples did not hear the conversation or see the will. At that time, Esquire Hale read the last (third) paragraph and it mentioned the Witt Baptist Cemetery and he wanted the church 'to take care of the graves of Ma and Pa'. He also testified that he did not read the second paragraph except to see the name, Mary, in it, but that Mack McClanahan told him what was in the second paragraph. At a later date; the Chancellor, on his own motion, recalled Esquire Hal S. Hale and over the objection of the defendants asked him further about the will in question. On this second examination, he said that he saw the will a third time 'about a month after' the second time, when he and 'Mr. Mack' were sitting in the Sunday School Class at Witt's Baptist Church. 'Mr. Mack' was getting some money out of his

billfold and patted Esquire Hale on the back, and 'I patted him back and saw this brown envelope' with Esquire Hale's name on it. This was the same brown envelope in which Mack had carried the will previously. Esquire Hale testified he saw the will a fourth time when he helped Mr. Mack fill out his Social Security blank. He testified that on all occasions the conversations between 'Mr. Mack' and himself were confidential, that no one overhead them and that he told no one about their conversations or what was in the will until after Mr. Mack McClanahan's death. He said that 'Mr. Mack' wanted him to keep the will but that he consulted a lawyer about it and on the lawyer's advice, did not keep it. As to Section II of the will, he testified 'Mr. Mack' told him that it contained the statement that he wanted to be buried in the Jarnagin Cemetery beside his wife, Mary, and that there was a signed check in the envelope made out to the Brook's Mortuary, (a well known funeral parlow in Morristown, Hamblen County, Tennessee.)''

By their assignments, defendants question whether or not there was sufficient evidence for the chancellor to sustain complainants' bill and decree Mack McClanahan died testate.

■ To establish a lost will it is incumbent upon the proponents to show (1) that the testator made and executed a valid will in accordance with the forms of law and the death of the testator; (2) that the will had not been revoked and is lost or destroyed or cannot be found after due and proper search; and (3) the substance and contents of the will. Vol. 1, Phillips' Pritchard Law of Wills, Sec. 50; Morris v. Swaney, 54 Tenn. 591; Moore et al. v. Williams et al., 30 Tenn.App. 479, 207 S.W.2d 590; Haven v. Wrinkle, 29 Tenn.App. 195, 195

S.W.2d 787. Not one but all of the above points must be proven by ''the clearest and most stringent evidence'' (Buchanan v. Matlock, 27 Tenn. 389) or ''clear, cogent and convincing proof'' (Wolfe v. Williams, 1 Tenn.App. 441).

These stringent requirements are imposed to avoid fraud. In Haven v. Wrinkle, supra, this Court, speaking through Judge Hale, said: ''Where a will has been lost or destroyed, the person seeking to set it up labors under a severe handicap. Doubtless this is due to the fear that a more elastic rule might bring about more fraud than it would prevent.'' Obviously, too rigid requirements could tend to give a perpetrator of a fraudulent destruction of a will protection where he may benefit from the fruits of his wrongs. It has never been the policy of the law to require the impossible. Nevertheless, those who attempt to set up a lost holographic will are met by an almost insurmountable barrier when called upon to produce strict and complete proof sufficient to establish legal execution and contents of the will.

In the old case of Buchanan v. Matlock, supra, is found the following:

''For it is laid down by Swinburne 'that, if a testament be made in writing, and afterwards lost by some casualty, if there be two unexceptionable witnesses who did see and read the testament written, and do remember the contents thereof, these two witnesses so deposing to the tenor of the will are sufficient for the proof in form of law.''

It is our opinion that probative value of the proof herein does not reach the equivalent of two ''unexceptionable witnesses'' as is required to prove valid

execution of a will. Hal Hale was the only person ever to see the proposed will. His testimony, along with the disputed document dated November 6, 1966, found in the deceased's car is the only evidence to support the existence of a will. Even though Mr. Hale saw the will on three or four occasions, his testimony does not show the instrument bore the signature of McClanahan which is a statutory requirement for probating a holographic will. T.C.A. 32-105.

As to the contents of the will, the proof is even weaker than as to existence. Again we have only the testimony of Mr. Hale who never read the entire contents of the will but relies upon what Mr. McClanahan told him as to at least a part of the will.

It is our further opinion the complainants have failed to prove by the clearest and most stringent evidence either the execution or contents of a valid will as is required by the authorities. Hunter v. Gardenhire, 81 Tenn. 658.

Even if it could be said the complainants' proof is sufficient to show execution or contents of a will, there still remains another barrier which in our opinion they have failed to overcome. Since McClanahan kept the will in his own possession, the fact that it could not be found after his death raises the presumption the will has been cancelled by the testator. Brown v. Brown, 18 Tenn. 84; Hickey v. Beeler, 180 Tenn. 31, 171 S.W.2d 277; Donnelly v. Hendrix, 49 Tenn.App. 361, 355 S.W.2d 116. The burden of rebutting this presumption is on the person seeking to establish a will. 95 C.J.S. Wills sec. 386(c); Haven v. Wrinkle, supra.

We agree with the chancellor's finding that there is not sufficient evidence to find the will was intentionally or willfully destroyed by someone other than the decedent but this in no way rebuts or affects the presumption that the testator himself cancelled the will.

It is not argued or proven the decedent ever became mentally incapacitated so as to be unable to revoke the will, or is it shown he had no opportunity to revoke. According to Mr. Hale, the last time he saw the will was several months prior to Mr. McClanahan's death. If it is assumed the will was in existence on November 6, 1966, the date borne by the disputed note found in decedent's car, this fact alone would not justify a conclusion the testator did not within the remaining months of his lifetime destroy the will with the intention of revoking it.

Without some evidence tending to show that the will was actually lost or fraudulently or accidentally destroyed against and not in accord with the testator's wishes and intentions, the presumption stands and the will must fail.

For the reasons indicated the decree of the chancellor is reversed with the costs incident to this appeal and in the court below taxed to complainants.

McAmis, P. J., and Cooper, J., concur.