IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 10, 2019 Session

## IN RE ESTATE OF GAYLE FRANKLIN COOK

**Appeal from the Chancery Court for Dyer County**
**No. 17-CV-434      Tony Childress, Chancellor**
_____

### No. W2018-01766-COA-R3-CV
_____

This case involves an effort to admit a lost will to probate. In the proceedings below, the trial court held that the lost will should be accepted for probate. Having reviewed the record transmitted to us on appeal, we affirm the judgment of the trial court

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Jason R. Creasy, Dyersburg, Tennessee, for the appellants, Ania Carpenter, and Shana Mireles.

John W. Palmer and Mark D. Butler, Dyersburg, Tennessee, for the appellees, Debra C. Jenkins, Dennis William Cook, and Dale Bradley Cook.

### MEMORANDUM OPINION[1]

### BACKGROUND AND PROCEDURAL HISTORY

On April 25, 2012, Gayle Franklin Cook ("the Decedent") executed a valid will at the office of attorney John Palmer. Although the Decedent's brother, John Cook ("Mr. Cook"), and Mr. Cook's daughter, Debra Jenkins ("Ms. Jenkins"), accompanied the

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Decedent to Mr. Palmer's office, neither Mr. Cook nor Ms. Jenkins was present in the room when the Decedent executed his will. It is undisputed, however, that Mr. Cook left Mr. Palmer's office with the original of his brother's will and that he took the original will to his home where he placed it in a drawer with other items of importance. According to the record, the Decedent later died in February of 2017.

The present dispute arose when Ms. Jenkins filed a petition in December 2017 alleging that her uncle's original will had been lost. She expressed her belief that the "lost will" had not been revoked by the Decedent during his lifetime, and she attached a copy of the will to her petition, praying that it be recognized and admitted to probate. Although Ms. Jenkins' petition noted that there were two heirs at law of the Decedent,[2] the petition represented that there were three different beneficiaries under the Decedent's lost will: Ms. Jenkins and her two brothers, Dale and Dennis Cook. Indeed, according to the copy of the will that was attached, the Decedent had specifically declared that he was "not unmindful of the fact" that he had "children and grandchildren who are not included as beneficiaries under this Last Will and Testament." Although the Decedent's heirs at laws subsequently moved to dismiss Ms. Jenkins' petition, their motion was denied by order entered May 3, 2018.

A trial on the issue of the "lost will" occurred on September 4, 2018, and following the conclusion of those proceedings, the trial court entered an order holding that "[the] April 25, 2012 [will] was simply lost and . . . should be accepted for probate." The Decedent's heirs at laws ("the Appellants") thereafter filed a timely notice of appeal in this Court.

## STANDARD OF REVIEW

On appeal, we review the trial court's findings of fact de novo with a presumption of correctness, and we honor those findings unless the evidence preponderates to the contrary. *In re Estate of Leath*, 294 S.W.3d 571, 574 (Tenn. Ct. App. 2008). The trial court's conclusions of law are reviewed de novo and are not accorded a presumption of correctness. *Id.* at 575.

## DISCUSSION

The dispute on appeal relates to whether the trial court erred in determining that the copy of the Decedent's April 25, 2012 will could be probated. Whereas Ms. Jenkins and her brothers maintain that the trial court did not err in its findings or conclusions, the Appellants argue that a lost will was not properly established. According to the Appellants, Ms. Jenkins' petition should have been dismissed by the trial court.

---

[2] The Decedent's heirs at law included a daughter and granddaughter of the Decedent.

As a general matter, the following elements must be established by the proponents of a lost will: "(1) that the testator made and executed a valid will in accordance with the forms of law and the death of the testator; (2) that the will had not been revoked and is lost or destroyed or cannot be found after due and proper search; and (3) the substance and contents of the will." *Sanders v. McClanahan*, 442 S.W.2d 664, 667 (Tenn. Ct. App. 1969). "[T]he proof necessary to establish a lost or stolen will must be clear, cogent, and convincing." *In re Estate of Simmons*, No. 01A01-9608-PB-00366, 1997 WL 718399, at *5 (Tenn. Ct. App. Nov. 19, 1997).

Here, there does not appear to be any dispute regarding the first or third of the elements outlined immediately above. Indeed, the parties agree that a valid will was made by the Decedent, and they all acknowledge the contents of that will. What remains in contention is the issue of whether the Decedent's will was revoked before his death.

As we have previously noted, the party seeking to establish a lost will has a heavy burden of proof:

> When a will cannot be found after the death of the testator, there is a strong presumption that it was destroyed or revoked by the testator himself, and this presumption stands in the place of positive proof. One who seeks to establish a lost or destroyed will assumes the burden of overcoming this presumption by adequate proof. It is not sufficient to show that persons interested to establish intestacy had an opportunity to destroy the will. One must go further and show by facts and circumstances that the will actually was lost or destroyed fraudulently or accidently against, and not in accordance with, the wishes and intention of the testator.
>
> The presumption that the will was destroyed by the testator, *animo revocandi*, may be rebutted, and its loss or destruction by other means may be shown, by circumstantial as well as positive evidence, [s]uch as: by showing that the testator did not have the custody and control of the instrument after its execution; that he had lost his testamentary capacity for a period before his death; that the will was in existence at the time the mental alienation occurred. The declarations of the testator, before or after making the will, are admissible in evidence to support or destroy the presumption of revocation.

*In re Estate of Leath*, 294 S.W.3d at 575 (quoting *Pritchard on Wills and Administration of Estates* § 51 (5th ed.)). It should further be noted that, despite the heavy burden faced by proponents of a lost will, "the law should not make it impossible for the beneficiary to have the testator's wishes enforced." *In re Estate of Brown*, No. 01A01-9809-PB-00471, 1999 WL 802718, at *11 (Tenn. Ct. App. Oct. 7, 1999). "To apply the presumption in a

- 3 -

way that requires a beneficiary to prove absolutely, rather than circumstantially, that the testator did not revoke the will would create an almost impossible barrier." *Id.*

As far as our review is concerned as an appellate court on this issue, our specific role was explained in the recent decision in *In re Estate of Roggli*, No. M2016-02562-COA-R3-CV, 2017 WL 4331040 (Tenn. Ct. App. Sept. 28, 2017). Therein, this Court noted as follows:

> While it rests primarily with the trial court to determine whether the evidence is clear, cogent, and convincing, its finding is not conclusive. In reviewing such cases, it is the duty of the appellate court to determine, not whether the trier of facts could reasonably conclude that it is more probable that the fact to be proved exists than that it does not, but whether the trier of facts could reasonably conclude that it is highly probable that the fact exists. Therefore, the party with the burden of persuasion may prevail only if he or she can "place in the ultimate factfinder an abiding conviction that the truth of [his] factual contentions are 'highly probable.'"

*Id.* at *3 (internal citations omitted). The essential issue for us in this case, therefore, is whether the proof established that it is "highly probable" that the April 25, 2012 will was not revoked by the Decedent.

Upon our review of the record, we agree with the trial court that the requisite standard of proof was satisfied in this case. As noted, although there is a presumption that a testator destroyed a will when it cannot be found at the testator's death, that presumption can be rebutted by, among other things, showing that the testator did not have custody and control of the instrument after its execution. *In re Estate of Leath*, 294 S.W.3d at 575 (quoting *Pritchard on Wills and Administration of Estates* § 51 (5th ed.)). In this case, the proof showed that the Decedent's brother received possession of the will immediately following its execution at attorney John Palmer's law office. Mr. Cook specifically testified that he took the original will to his home after he left Mr. Palmer's office. When asked what he did with the will, Mr. Cook responded as follows: "When I got home, I had a drawer that I kept things like that in, and I opened that drawer and put that will in that drawer." Mr. Cook testified that he told his daughter, Ms. Jenkins, where the will was because she was "handling all his affairs anyway,"[3] but he stated that he was not aware of anybody else having knowledge of where the original will was located. When asked if the Decedent ever had the original will that he had taken into his possession, Mr. Cook replied, "No, sir; never had it." Ms. Jenkins' testimony confirmed that her father had possession of the will immediately after its execution, and she

---

[3] The record reflects that the Decedent and Ms. Jenkins had a close relationship as evidenced by the fact that Ms. Jenkins had power of attorney for the Decedent.

- 4 -

specifically stated that she had seen her father put the will in the drawer where it had been stored.

Although there was evidence demonstrating that the Decedent had visited Mr. Cook's home on many occasions following the will's execution, there is no proof that he ever knew of the will's location. Moreover, there is no proof that the Decedent ever had possession of the will after it was taken by Mr. Cook from Mr. Palmer's office. Even assuming there was evidence suggesting that the Decedent knew where the will was located, it seems unlikely that he would choose to revoke it so as to prevent his niece— who had his power of attorney and was handling his affairs and a beneficiary under the will—from receiving any of his property.

Those who knew about the will's location, Ms. Jenkins and Mr. Cook, both testified that they could not find the will after the Decedent's death. For his part, Mr. Cook testified that he "didn't misplace the will" and that he had "put it in the drawer, and the will was -- . . . thrown away, or something." Ms. Jenkins specifically pointed towards her mother and her mother's caretakers as an explanation for why the will was accidentally lost. Regarding her mother, who she claimed had "dementia, Alzheimer's," Ms. Jenkins stated as follows:

> I know that she had a tendency to move things around, misplace things. We were hunting for things all the time that she had moved, you know. I know that was the case. We were always having to -- any time we set a purse down, it would -- we would have to look for it when we left or clothes, everything. She was moving things all the time[.]

However, despite a thorough search, Ms. Jenkins was not able to find the will. As she explained at trial:

> I searched everywhere that I have been. Just in the event that [mom] could have put it in my purse, if she did, because I would find things, you know, that she -- that she had misplaced.
>
> And so I just looked everywhere. Everywhere I went from my house in Union City to the apartment that I live in, in Paducah, to my daughter's house. Every house that I had been in just to make sure, and my dad's house top to bottom. Everywhere.

Ms. Jenkins also stated that she had searched the Decedent's home for the will.

The undisputed facts thus show that the will was in the sole possession of Mr. Cook, not the Decedent, immediately following the will's execution, and the testimony supports that it was thereafter stored at Mr. Cook's home. There is also no proof in this

record that the Decedent ever knew about the will's location, and Ms. Jenkins offered proof that her mother, who was suffering from dementia, had frequently misplaced and moved things around in her father's home. In view of all of the uncontradicted testimony discussed above, we are of the opinion that the trial court could reasonably conclude that it was "highly probable" that the April 25, 2012 will was not revoked by the Decedent.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is hereby affirmed.

_____
ARNOLD B. GOLDIN, JUDGE