IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 8, 2003 Session

## IN RE: THE ESTATE OF LOWELL FRAZIER

## Appeal from the Chancery Court for Campbell County
### No. P-1847    Billy Joe White, Chancellor

## FILED AUGUST 27, 2003

## No. E2002-01203-COA-R3-CV

This appeal concerns two separate suits filed in the Chancery Court for Campbell County in connection with the administration of the Estate of Lowell Frazier. The first suit was brought by Sam Lough, individually, and also, along with his wife, Debbie Lough, as parents and guardians of Matthew Lough, and Darryl Herron and Elizabeth Herron, as parents and guardians of Chelsea Herron. It sought to establish a lost or spoilated will of Mr. Frazier, which was dated January 30, 1998 ("the first will"). The second suit was brought by Matthew Lough and Chelsea Herron by and through their *guardian ad litem*, appointed in the first case, contesting a later will dated May 24, 2000 ("the second will"). The cases were consolidated below and the suit seeking to establish the first will was tried first. Under an agreement of the parties, the first case must be decided in favor of the minors before they would have standing to contest the second will. After a plenary trial a jury found as to the first case that the Plaintiffs proved by clear and convincing evidence that Lowell Frazier did not destroy the first will. Thereupon, the second trial was had before the same jury, which found against the second will on the ground that due execution was not proved and that Glenda Faye Smith, who was the sole beneficiary of the second will, and at the time it was executed was attorney-in-fact for Mr. Frazier, did not overcome the presumption of undue influence over Mr. Frazier by clear and convincing evidence. Ms. Smith raises a number of issues, many of which merit a critical examination, but our review of the record persuades us that the issue which contends that she was entitled to a directed verdict in the first case is the dispositive issue in this appeal. We find that the Court was in error in not directing a verdict in her favor in the lost will case and reverse the judgment rendered therein. This results in the Plaintiffs not having standing to pursue the second case, which is reversed and dismissed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Chancery Court Reversed, Suit Dismissed, and Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and D. MICHAEL SWINEY, JJ., joined.

Dudley W. Taylor, Knoxville, Tennessee, for the Appellant, Glenda Faye Smith.

Johnny V. Dunaway, LaFollette, Tennessee, *Guardian Ad Litem,* for the Appellees, Matthew Lough and Chelsea Herron.

**OPINION**

Our standard of review of a jury verdict is well settled. It was addressed by the Supreme Court in a 1994 opinion as follows:

> Rule 13(d) of the Tennessee Rules of Appellate Procedure provides that "[f]indings of fact by a jury in civil actions shall be set aside only if there is no material evidence to support the verdict." As this Court stated in the recent case of *Hodges v. S. C. Toof & Co.*, "It is well established that when reviewing a judgment based on a jury verdict, appellate courts are limited to determining whether there is material evidence to support the verdict." 833 S.W.2d [896,] 898 [(Tenn. 1992].
>
> It is the time honored rule in this State that in reviewing a judgment based upon a jury verdict the appellate courts are not at liberty to weigh the evidence or to decide where the preponderance lies, but are limited to determining whether there is material evidence to support the verdict; and in determining whether there is material evidence to support the verdict, the appellate court is required to take the strongest legitimate view of all the evidence in favor of the verdict, to assume the truth of all that tends to support it, allowing all reasonable inferences to sustain the verdict, and to discard all to the contrary. Having thus examined the record, if there be any material evidence to support the verdict, it must be affirmed; if it were otherwise, the parties would be deprived of their constitutional right to trial by jury.
>
> *Crabtree Masonry Co. v. C. & R. Constr., Inc.*, 575 S.W.2d 4, 5 (Tenn. 1978).

*Forrester v. Stockstill*, 869 S.W.2d 328, 329-30 (Tenn. 1994).

Although not alleged, it was the theory of the Plaintiffs as to the first case that Ms. Smith and J. Stanley Hurst, the attorney who initially represented her in the cases on appeal, as well as other civil and criminal matters, conspired to destroy the first will.

The *Guardian Ad Litem* for the minor children, in the opening argument, stated the following:

MR. DUNAWAY: There's one other thing, ladies and gentlemen. She's committing the robbery. Mr. Hurst is driving the getaway car, and the evidence will show that as we get into the proof.

During the course of the trial he referred to Ms. Smith and Mr. Hurst as Bonnie and Clyde and, finally, in his closing argument said to the jury:

Now, I'll take you back to where we were at the very beginning of this case where you can write the result. I submit to you do not let Glenda Smith rob this estate. Don't put gas in the getaway car; dismantle the BMW.[1]

In our review of the evidence we deem pertinent we will endeavor to follow the standard of review hereinbefore set out.

The record in the consolidated cases is voluminous. The transcript as to the first case consisted of 1183 pages, and the second case 208 pages. We will, however, only detail the facts adduced in the first case, which are germane to our resolution of this appeal.

Lowell Frazier was married to Christine Frazier, who died in April 1996. They had no children. Thereafter, on January 30, 1998, Mr. Frazier executed the first will naming as beneficiaries his wife's nephew, Mr. Lough, Mr. Lough's young son, and Chelsea Herron. The Lough family had a close relationship with Mr. Frazier until a rift occurred in the fall of 1999 because of Mrs. Herron's use of a vehicle owned by Mr. Frazier and the family had little or no contact with Mr. Frazier thereafter.

Chelsea Herron's parents live near Mr. Frazier, and he had known her since her birth and, as shown by the proof, had an affection for her during his lifetime. There is nothing in the record to suggest why the second will did not include her.

Ms. Smith met Mr. Frazier after the death of his wife, and there is not even a hint in the record that their relationship had any sexual connotation. Indeed, it was more as if they were father and daughter and Ms. Smith referred to him as "Dad." It should also be noted that Ms. Smith ministered to him during two illnesses, the first resulting from a hernia operation, and the second when he was hospitalized just prior to his death.

---

[1] Mr. Hurst was the owner of a BMW automobile.

On May 24, 2000, Mr. Frazier executed the second will which, although inartfully drawn, left his entire estate to Ms. Smith.[2]

Robert Asbury, a LaFollette attorney who prepared the first will, gave the first will[3] to Mr. Frazier, but kept a copy for his files. The first will was placed on the kitchen table at Mr. Frazier's residence and, later, in the family Bible. It was not found in a search made by Mr. Lough and Mrs. Herron shortly after Mr. Frazier's death.

Mr. Frazier died on February 18, 2001, and when the second will was attempted to be probated the Clerk of the Probate Court advised that a suit had been filed seeking to set up the first will as a lost will and declined to issue letters of administration to Ms. Smith, the Executrix.

In the past Mr. Hurst had represented Ms. Smith in several matters spanning a period of some 15 years.[4] He prepared a power of attorney,[5] appointing Ms. Smith Mr. Frazier's attorney in fact, which was signed on May 4, 2000. According to Mr. Hurst, this instrument was signed in the absence of Ms. Smith. Ms. Smith's testimony in regard to the power of attorney is contradictory. In her discovery deposition she stated she was present when the power of attorney was signed; in her testimony at trial she stated she was not present; and finally stated she did not know whether she was present or not. Thereafter, the second will, which is under attack in this suit, was prepared for Mr. Frazier by Mr. Hurst. Ms. Smith was not present on this occasion.

There is proof that both Mr. Hurst and Ms. Smith, together and separately, visited the residence of Mr. Frazier on a number of occasions and on one occasion were observed carrying black trash bags out of the house, loading them into a truck and carrying them away. A cardboard box was also removed by a former female friend of Ms. Smith.

---

[2] The signature line on the second will denoted the signor as "Testatrix" rather than "Testator," and also provided that his real and personal property was "to be divided equally except as stated herein," when, as already noted, Ms. Smith was the sole beneficiary under this will.

[3] The first will prepared by Mr. Asbury was also inartfully drawn, in that, although providing specific bequests of investments, it did not have a residuary clause which could pose a problem should Mr. Frazier have changed his investments

[4] Mr. Hurst's representation included three felony cases, resulting in Ms. Smith's conviction. She, however, was not required to serve any time in the penitentiary.

[5] Ms. Smith used the authority granted under the power of attorney only on one occasion, and that was to pay medical bills incurred by Mr. Frazier.

Mrs. Herron also testified that she saw Ms. Smith carrying an object out of Mr. Frazier's house. She could not identify what the object was, but stated it appeared to be a "pewter gray" statuette. Ms. Smith testified that at one time she carried a Coca-Cola bottle which was green colored and in the fashion of old-time Coca-Cola bottles.

Whichever version might be true, it is clear that the object was not the first will of Mr. Frazier. There is also proof that no current records, except for perhaps two months, were found of Mr. Frazier's financial dealings.[6] As to this point, the proof shows that the house was broken into sometime prior to the afternoon of March 5, 2001.

The undisputed proof also shows that when Mr. Frazier was executing his second will Mr. Hurst advised him that he should destroy any prior wills, to which Mr. Frazier responded, "I've already taken care of that."

Although Mr. Hurst was cast as a co-conspirator, every witness that testified on the subject–with the possible exception of Rob Asbury, who prepared the first will and initially represented the Plaintiffs in the consolidated cases–did not disparage Mr. Hurst's reputation as an attorney, nor cast doubt upon his veracity. Mr. Asbury, however, testified he had heard some rumors regarding Mr. Hurst "kiting warrants,"[7] presumably while he was a city judge, but he did not have any problem "with Mr. Hurst's candor." He did have reservations regarding Mr. Hurst's reputation and conceded it was most likely because of the pending suit to establish the lost will which he initiated.

In addition, there was introduced into the record excerpts from Martindale and Hubbell, a publication that rates lawyers based upon interviews with other attorneys, and sometimes judges, that Mr. Hurst's general ethical standard was "very high."

Although we are required, as hereinbefore set out, to accept as true all testimony favorable to the Plaintiff's position and indulge all favorable inferences rising therefrom, there is another rule of law that comes into play in disposing of the first suit.

This rule was articulated in the case of *In re Estate of West*, 729 S.W.2d 676 (Tenn. Ct. App. 1987), wherein we stated the following (at page 678):

---

[6] An empty shredding machine was also found in the residence.

[7] The definition of "kiting warrants" is not entirely clear, but as we understand the record, it means the Trial Judge removes warrants from the docket prior to trial.

In order to establish a lost will the proponent of that will must show (1) the fact that the will was executed in accordance with the forms of law, (2) the substance or contents of the will, and (3) that the will has not been revoked, and that it is lost or destroyed or cannot be found after a due and proper search. *Morris v. Swaney,* 54 Tenn. 591 (1872); *Sanders v. McClanahan*, 59 Tenn.App. 590, 442 S.W.2d 664 (1969).  However, the fact that a will cannot be found after a due and proper search raises a presumption that the testator himself destroyed the will.  *Haven v. Wrinkle*, 29 Tenn.App. 195, 195 S.W.2d 787 (1945); *Shrum v. Powell, 604 S.W.2d 869* (Tenn.App.1980).  Therefore, to overcome the presumption the one seeking to establish a lost will must prove that the testator did not have custody and control of the will after execution, or that he had lost his testamentary capacity for a period before his death and that the will was in existence at the time the loss of competency occurred.  *Haven v. Wrinkle*, 29 Tenn.App. at 212, 195 S.W.2d 787.

In *Shrum v. Powell*, 604 S.W.2d 869 (Tenn. Ct. App. 1980), this Court quotes with approval from the case of *Wolfe v. Williams*, to the following effect (at page 871):

To establish a lost will it is incumbent upon the proponents to show (1) that the testator made and executed a valid will in accordance with the forms of law and the death of the testator; (2) that the will had not been revoked and is lost or destroyed or cannot be found after due and proper search; and (3) the substance and contents of the will.  Vol 1, *Phillips' Pritchard Law of Wills*, Sec. 50; *Morris v. Swaney*, 54 Tenn. 591 [(1872)]; *Moore et al. v. Williams, et al.*, 30 Tenn.App 479, 207 S.W.2d 590 [(1947)]; *Haven v. Wrinkle*, 29 Tenn.App. 195, 195 S.W.2d 787 [(1945)].  Not one but <u>all</u> of the above points must be proven by "the clearest and most stringent evidence" (*Buchanan v. Matlock*, 27 Tenn. 389 [(1847)]) or "clear, cogent and convincing proof" (*Wolfe v. Williams*, 1 Tenn.App. 441 [(1925)]).  (Emphasis added.)

Moreover, the treatise *Pritchard on Wills*, 5th Ed., Sec. 51, *et seq*., addresses the subject thusly:

### § 51.  Proof necessary to set up lost will; decree.

For the establishment of a lost will, it is necessary for the plaintiff to show to the satisfaction of the court: first, that the testator made and executed a valid will in accordance with the forms of law, and the death of the testator; second, that

-6-

the will had not been revoked, and is lost or destroyed, or cannot be found after due and proper search; and third, the substance and contents of the will.

1.  It seems that the execution of the will must be proved by all the subscribing witnesses if alive and within the jurisdiction of the court, with the same formality as if the will itself were produced in court for probate. The heir or distributee is entitled to have all the witnesses examined, and a failure to introduce them must be excused by proof of a sufficient reason for their nonintroduction. With respect to a will executed before enactment of the Execution of Wills Act of 1941, its due and formal execution in one of the two modes made essential by statute to the validity of this class of wills had to be shown; but in every case, the proof of fact of execution had to be equal to the clearest and most satisfactory testimony of two unexceptionable witnesses.

In the case of a will of either real estate or personalty executed after February 15, 1941, its due and formal execution in conformity with the Execution of Wills Act must be shown.

2.  When a will cannot be found after the death of a testator, there is a strong presumption that it was destroyed or revoked by the testator himself, and this presumption stands in the place of positive proof. One who seeks to establish a lost or destroyed will assumes the burden of overcoming this presumption by adequate proof. It is not sufficient to show that persons interested to establish intestacy had an <u>opportunity</u> to destroy the will. One must go further and show by facts and circumstances that the will actually was lost or destroyed fraudulently or accidentally against, and not in accordance with, the wishes and intention of the testator. (Emphasis added.)

The presumption that the will was destroyed by the testator, *animo revocandi*, may be rebutted, and its loss or destruction by other means may be shown, by circumstantial as well as positive evidence, as: by showing that the testator did not have the custody and control of the instrument after its execution; that he had lost his testamentary capacity for a period before his death; that the will was in existence at the time the mental alienation occurred; and the like. The declarations of the testator, before or after making the will, are admissible in evidence to support or destroy the presumption of revocation.

3.  Before secondary proof of the contents of the will can be admitted, it must be shown that the instrument itself has been destroyed absolutely; or the party must show that, with reasonable diligence, he has resorted to and exhausted

all the sources of information and means of discovery that were accessible to him and that the nature of the case would suggest. When the necessary proof of loss or destruction has been made, the contents of the will may be established by the same character of evidence as other lost or destroyed instruments: first by a copy, and second by proof of its contents from memory and recollection. The contents may be proved by a copy kept by the attorney who drew it.

In reaching our conclusion that the Plaintiffs have not satisfactorily rebutted the presumption that Mr. Frazier destroyed the first will, we have not overlooked the testimony of Ms. Herron that Mr. Frazier reassured her in the fall of the year 2000, several months after the second will was executed, that her daughter Chelsea would not have to worry about her college education. In this regard we also note a statement from *Pritchard*, found in § 51, that "Declarations of a testator, standing alone, are insufficient to overcome the presumption of revocation of a lost will."

The *Guardian Ad Litem* argues in support of his ward's position that the proof shows Ms. Smith had the motive, inclination and opportunity to destroy the first will. With all due respect to counsel, this does not meet the requirements of the case law and treatise above set out, particularly in light of the representation made by Mr. Frazier to Mr. Hurst when he was told that he should destroy any prior wills.

Finally, we observe that the transcript of the lost will case is replete with extraneous, irrelevant and incompetent testimony and should have been presented more concisely by targeting the sole issue with regard thereto–whether the Plaintiffs' proof had overcome the strong presumption that Mr. Frazier destroyed his first will.

For the foregoing reasons the judgment of the Trial Court in the lost will case is reversed and the case dismissed. Having done so, it follows, in accordance with the agreement of the parties, the Plaintiffs have no standing to pursue a contest as to the second will. The case is remanded for further proceedings, if any, as may be necessary and collection of costs below which are, as are costs of appeal, adjudged against Sam Lough, Debbie Lough, Darryl Herron and Elizabeth Herron.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE