Opal DAN, Appellant,

v.

Desiree DAN and Freda Dan, Appellees.

No. S–13788.

Supreme Court of Alaska.

Nov. 16, 2012.

---

Donna C. Willard, Law Offices of Donna C. Willard, Anchorage, for Appellant.

Curtis W. Patteson, Law Offices of Curtis W. Patteson, LLC, Anchorage, for Appellees.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

*OPINION*

STOWERS, Justice.

## I. INTRODUCTION

This appeal concerns a dispute between three daughters regarding the administration of their deceased mother's estate. The dispute centered around three documents: (1) a will executed in 1987; (2) a revised will the decedent allegedly executed in 2007 or 2008, which contained a clause revoking all prior wills; and (3) an exhibit that was allegedly an accurate—but unsigned—draft of the revised will.

After an evidentiary hearing, the superior court found that: (1) the decedent executed a valid will in 1987; (2) the decedent subsequently executed a revised will, but that will was lost; and (3) the revised will had revoked the 1987 will. Because an executed version of the revised will was never located, the superior court concluded it had been destroyed by the decedent, leaving her estate to be administered under Alaska's statutory scheme for intestate succession. On appeal, one daughter challenges the superior court's conclusion that the 1987 will was properly revoked. We remand for the superior court to determine whether its finding that the revised will was properly executed is supported by clear and convincing evidence. We

also remand for the superior court to determine whether the evidence presented at trial is sufficient to overcome the presumption that the decedent destroyed her will.

## II. FACTS AND PROCEEDINGS

Rose Anna Dan Waghiyi executed a will in 1987. On June 2, 2008, Rose Anna died. She left numerous heirs, including the three daughters who are parties to this appeal: Opal, Freda, and Desiree. A dispute arose after Rose Anna's death about whether she left a validly executed will.

After Rose Anna's death, Desiree filed an application with the superior court for informal probate of an unsigned and undated will that Desiree alleged had been validly executed. Opal objected to informal probate of the unsigned will and filed a petition for formal probate of the 1987 will, which Opal claimed was Rose Anna's last validly executed will. In July 2009, Superior Court Judge Ben Esch held a hearing to determine which will the estate would be administered under.

Freda testified that in the winter of 2007, Rose Anna asked Freda to prepare a revised version of her will. Freda complied with Rose Anna's request, prepared the revised will on her home computer in Anchorage, and printed it on the back of Christmas stationery.[1] Freda mailed the revised will to Rose Anna in Stebbins. Though Freda testified that she never saw a signed version of the revised will, she testified that the unsigned will Desiree had submitted for probate was an accurate copy of the revised will that she had printed on Christmas stationery and sent to Rose Anna. The unsigned will was admitted into evidence as Exhibit 1. Exhibit 1 is two pages long and contains a provision stating that it "hereby revok[es] all former wills made by [Rose Anna]."

Margaret Marlin testified that she had signed a will for Rose Anna as a witness at the Stebbins post office a few months before Rose Anna died. Marlin also testified this was the only will she ever witnessed for Rose Anna. Laura Odinzoff, the former postmistress in Stebbins, testified that she signed

---

1. Freda testified that Rose Anna asked her to revise the will on at least six occasions between 1991 and 2007. No copies of these other revised wills were introduced, and the superior court concluded that "[n]o evidence was offered to prove the content or that any of these documents were properly executed."

and notarized a document at Rose Anna's request at the post office a "little while" before Rose Anna died. Odinzoff did not remember the content of the document she signed and notarized or whether the document was a will, but she testified that it was a document Rose Anna wanted to be "official." Odinzoff also remembered that the document was approximately two pages long and that another person had signed it, although she could not remember who. Odinzoff did not recall serving as a notary for Rose Anna on any other occasions.

Desiree testified that she saw photocopies of Exhibit 1 in her mother's possession in Stebbins in the spring of 2007. She testified that her mother excitedly showed her two copies of the will, both of which had been signed by Rose Anna, Marlin, and Odinzoff. Desiree testified that her mother gave her a third copy of the revised will that was unsigned because it was printed on Christmas stationery.

After hearing this testimony, the superior court found that in late 2007 or January 2008, Freda prepared and printed the revised will admitted as Exhibit 1 and sent it to Rose Anna in Stebbins. The court also found that Rose Anna properly executed two copies of the revised will, and Odinzoff and Marlin witnessed her signature. Because the draft of the revised will admitted as Exhibit 1 included a clause expressly revoking all of Rose Anna's former wills, the court concluded that the revised will revoked the 1987 will.

However, because no signed version of the revised will was ever located after Rose Anna died, and the superior court found that "no evidence was produced that anyone else had any ability to have access to it," the court concluded it "must find that the properly executed will was destroyed by [Rose Anna] for the purpose of revoking that will." The superior court found that Rose Anna's "repeated efforts to craft and tailor a will demonstrates an intention not to die intestate," but ruled that she nonetheless died intestate under AS 13.12.507(a).[2]

Opal appeals the superior court's order requiring that Rose Anna's estate be administered according to Alaska's statutory scheme for intestate succession. She claims the superior court's finding that the 1987 will was properly revoked was not supported by sufficient evidence. Alternatively, Opal argues that the doctrine of dependent relative revocation revives the 1987 will.

## III. STANDARD OF REVIEW

We review the superior court's factual findings for clear error, which exists "only when we are left with a definite and firm conviction based on the entire record that a mistake has been made."[3] We grant "especially strong deference to a trial court's factual findings when the findings require weighing the credibility of witnesses and conflicting oral testimony."[4]

We review a trial court's legal analysis de novo, applying "the rule of law that is most persuasive in light of precedent, reason, and policy."[5]

## IV. DISCUSSION

### A. The Superior Court Did Not State Whether It Applied The Clear And Convincing Standard Of Proof Or The Preponderance Of The Evidence Standard When It Found That The Revised Will Was Properly Executed.

In Alaska, a validly executed will must be:

---

2. Alaska Statute 13.12.507(a) provides:
 (a) A will or a part of a will is revoked
 (1) by executing a subsequent will that revokes the previous will or part expressly or by inconsistency; or
 (2) by performing a revocatory act on the will, if the testator performed the act with the intent and for the purpose of revoking the will or part of the will or if another individual performed the act in the testator's conscious presence and by the testator's direction; in this paragraph, "revocatory act on the will" includes burning, tearing, canceling, obliterating, or destroying the will or any part of it; a "revocatory act on the will" includes a burning, tearing, or canceling whether or not the burn, tear, or cancellation touched any of the words on the will.

3. *In re Protective Proceedings of W.A.*, 193 P.3d 743, 748 (Alaska 2008) (quoting *Casey v. Semco Energy, Inc.*, 92 P.3d 379, 382 (Alaska 2004)).

4. *Vezey v. Green*, 171 P.3d 1125, 1128–29 (Alaska 2007) (citing *Vezey v. Green*, 35 P.3d 14, 20 (Alaska 2001)).

5. *Id.* at 1129 (quoting *Vezey*, 35 P.3d at 20).

(1) in writing; (2) signed by the testator or in the testator's name by another individual in the testator's conscious presence and by the testator's direction; and (3) signed by at least two individuals, each of whom signs within a reasonable time after the witness witnesses either the signing of the will [by the testator] or the testator's acknowledgment of that signature or the will.[6]

The superior court found that Rose Anna "properly executed a will in 1987," but that she revoked the 1987 will by executing the revised will. The superior court did not state whether it found that the revised will had been executed by clear and convincing evidence or by a preponderance of the evidence.

## 1. The execution and contents of a lost will must be proved by clear and convincing evidence.

■ We have never addressed the standard of proof required to prove the execution or contents of a lost will. Many other jurisdictions have been faced with this question, however.

The North Carolina Supreme Court has addressed an attempt to prove that a lost will revoked a prior will, and the court held that the execution and contents of a lost will must be proved by "clear, strong, and convincing proof." [7] Courts in Maine, Nebraska, and New Mexico have also held that the execution of a lost will must be proved by clear and convincing evidence.[8]

The South Dakota Supreme Court has also considered this issue and required merely a preponderance of the evidence.[9] But the court relied on a South Dakota statute that required a lost will to be proven by the same standard of proof as wills in other cases.[10] Alaska does not have a similar statute.

Similarly, North Dakota has adopted a preponderance of the evidence standard pursuant to a rule of evidence, which provides:

In all civil actions and proceedings not otherwise provided for by statute or by these rules, if facts giving rise to a presumption are established by credible evidence, the presumption substitutes for evidence of the existence of the fact presumed until the trier of fact finds from credible evidence that the fact presumed does not exist, in which event the presumption is rebutted and ceases to operate. *A party against whom a presumption is directed has the burden of proving that the nonexistence of the presumed fact is more probable than its existence.*[11]

The North Dakota Supreme Court has held that this rule of evidence requires a party seeking to probate a missing will to demonstrate by a preponderance of the evidence that the lost will was not destroyed or revoked.[12] Alaska does not have a similar rule of evidence or statute specifying the burden of proof that must be applied in this situation.

As discussed above, states deciding the issue under the common law have applied the clear and convincing standard. Tennessee also requires "the clearest and most stringent" evidence to prove execution of a lost will.[13] In *Sanders v. McClanahan,* the Tennessee Court of Appeals explained:

These stringent requirements are imposed to avoid fraud. In *Haven v. Wrinkle* ...

---

**6.** AS 13.12.502(a). There are some exceptions to this rule that are not relevant here.

**7.** *In re Will of McCauley,* 356 N.C. 91, 565 S.E.2d 88, 95 (2002).

**8.** *In re Estate of Richard,* 556 A.2d 1091, 1091 (Me.1989); *In re Estate of Mecello,* 262 Neb. 493, 633 N.W.2d 892, 899 (2001); *In re Estate of Kerr,* 121 N.M. 854, 918 P.2d 1354, 1360 (N.M.App. 1996).

**9.** *Matter of Modde's Estate,* 323 N.W.2d 895, 897–98 (S.D.1982).

**10.** *Id.* The statute read: "Whenever any will is lost or destroyed, the circuit court must take

proof of the execution and validity thereof, and establish the same, notice to all persons interested being first given, as prescribed in regard to proofs of wills in other cases." *Id.* at 897 n. 1 (citing S.D. Codified Laws § 30–6–26).

**11.** N.D. R Evid. 301(a) (emphasis added).

**12.** *In re Estate of Conley,* 753 N.W.2d 384, 392–93 (N.D.2008).

**13.** *Sanders v. McClanahan,* 59 Tenn.App. 590, 442 S.W.2d 664, 667 (1969).

this Court, speaking through Judge Hale, said: "Where a will has been lost or destroyed, the person seeking to set it up labors under a severe handicap. Doubtless this is due to the fear that a more elastic rule might bring about more fraud than it would prevent." Obviously, too rigid requirements could tend to give a perpetrator of a fraudulent destruction of a will protection where he may benefit from the fruits of his wrongs. It has never been the policy of the law to require the impossible. Nevertheless, those who attempt to set up a lost holographic will are met by an almost insurmountable barrier when called upon to produce strict and complete proof sufficient to establish legal execution and contents of the will.[14]

We agree that a lost will must be proved by clear and convincing evidence. This higher burden of proof decreases the chance that a will could be fabricated out of whole cloth, or that the draft of a will that the testator never intended to sign might be probated. In our view, allowing a lost will to be proved by a mere preponderance of the evidence would create more opportunities for fraud.

## 2. The superior court did not state whether its findings were made under the clear and convincing standard.

We review factual findings for clear error.[15] But in this case it is not clear whether the superior court's finding that Rose Anna properly executed the lost will was made under the clear and convincing standard. We therefore remand the case to the superior court for the court to determine whether this finding is supported by clear and convincing evidence. Because the superior court must first resolve this factual issue concerning the validity of the revised will, we do not address Opal's arguments regarding the continued validity of the 1987 will.

## B. The Superior Court Did Not State Whether The Evidence Presented At Trial Rebutted The Presumption That Rose Anna Destroyed Her Revised Will.

The superior court concluded that because the signed and witnessed copies of Rose Anna's revised will were never found, it "must find that the properly executed will was destroyed by [Rose Anna] for the purpose of revoking that will."

Alaska Statute 13.12.507(a)(2) provides that performing a revocatory act on the will revokes it "if the testator performed the act with the intent and for the purpose of revoking the will." Destruction of the will is considered a revocatory act.[16] The Restatement (Third) of Property explains:

If a will is traced to the testator's possession and cannot be found after death, there are three plausible explanations for its absence: The testator destroyed it with the intent to revoke; the will was accidentally destroyed or lost; or the will was wrongfully destroyed or suppressed by someone dissatisfied with its terms. Of these plausible explanations, the law presumes that the testator destroyed the will with intent to revoke it....

The presumption that the testator destroyed the will or performed some other revocatory act on it with intent to revoke is rebuttable. Because of the other plausible explanations for a will's absence or condition, the presumption is not such a strong one that clear and convincing evidence is required to rebut it.[17]

Thus, the presumption that Rose Anna destroyed the revised will was rebuttable. The superior court found that "[n]o evidence was produced concerning the circumstances of [Rose Anna's] destruction of the last signed will," but it did not make a finding on whether the presumption of destruction was rebutted by the other evidence presented at trial. Because it is not clear whether the

**14.** *Id.* (quoting *Haven v. Wrinkle,* 29 Tenn.App. 195, 195 S.W.2d 787, 793 (1946)).

**15.** *In re Protective Proceedings of W.A.,* 193 P.3d 743, 748 (Alaska 2008) (quoting *Casey v. Semco Energy, Inc.,* 92 P.3d 379, 382 (Alaska 2004)).

**16.** AS 13.12.507(a)(2).

**17.** RESTATEMENT (THIRD) OF PROPERTY: WILLS AND OTHER DONATIVE TRANSFERS § 4.1 cmt. j (1999).

court found that the evidence presented at trial overcame the rebuttable presumption, we remand for the superior court to make this factual determination.

## V. CONCLUSION

We REMAND for the superior court to determine whether the lost will's contents and execution were proved by clear and convincing evidence and whether the presumption of destruction was rebutted by the evidence presented at trial.

CHRISTEN, Justice, not participating.