*Notice: This opinion is subject to correction before publication in the Pacific Reporter. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

# THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| In the Matter of the Estate of JANICE V. EVENSEN. | Supreme Court No. S-18378 |
| ALASKA SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS, | Superior Court No. 3AN-19-02846 PR<br><br>O P I N I O N |
| Appellant, | No. 7664 – June 30, 2023 |
| v. | |
| STEPHEN OSTERBERG, Personal Representative of the Estate of RAGNI OSTERBERG, | |
| Appellee. | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: David G. Shaftel, Shaftel Delman, LLC, Anchorage, for Appellant. Alexandra G. Foote-Jones, Durrell Law Group, P.C., Anchorage, for Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

MAASSEN, Justice,

## I. INTRODUCTION

A holographic will is one that does not meet the usual requirements of a valid will — i.e., that it be in writing, signed by the testator, and properly witnessed[1] — but is nonetheless deemed sufficient to demonstrate the testator's intentions because "the signature and material portions of the document are in the testator's handwriting."[2] In this appeal we address the argument that one or both of two will documents constitute a valid holographic will. Both of them are signed by the testator, but neither was properly witnessed.

We conclude that one will, first signed in 1994 and subsequently modified several times by the testator, meets the statutory requirements for a valid holographic will, and we therefore reverse the superior court's contrary conclusion. We also conclude, however, that the superior court correctly determined that a later will, signed in 2007, was presumptively revoked because the original document was never found, and that the later will's proponent failed to overcome the presumption. We affirm the court's rejection of the 2007 will. We remand the case for further proceedings consistent with this opinion.

## II. FACTS AND PROCEEDINGS

### A. Facts

#### 1. Janice Evensen's early life

Janice Evensen was born in 1939 to Vernon and Ragni Osterberg. She grew up in Washington and had one sibling, Stephen, eight years her junior. She married James Roan in 1956, and they had a daughter named Susan. After the couple's divorce a few years later, Janice and Susan moved in with Janice's parents, who supported them while Janice returned to school to learn to be a court reporter. In 1962

---

[1]    AS 13.12.502(a).

[2]    AS 13.12.502(b).

Janice and Susan moved to Alaska, where Janice again married and divorced. She worked as a court reporter and later as a secretary.

### 2. Janice's relationship with her family

Janice suffered from bipolar disorder and manic depression. According to Janice's brother Stephen, Janice declined to take medication for her mental illness, resolving to treat it instead with witchcraft. Stephen would later testify that Janice's relationships with other members of the family essentially ended after their mother Ragni's 1991 visit to Alaska. One night, as Stephen recalled it, Janice drove Ragni into the mountains to see "[i]nvisible people." Disturbed, Ragni flew home the next day. Janice abruptly broke off relations with her and asked other family members, including Stephen, to do the same. When they refused, Janice cut ties with them as well. Her relationship with her daughter, Susan, had been rocky while Susan was growing up, and when Susan later tried to mend it Janice rejected her efforts. Susan died in 2014.

### 3. Janice's later years

Janice lived in the same neighborhood in Anchorage for much of her later life. According to her neighbor, David Kranich, the community found her "hard to deal with," but nevertheless several neighbors helped her out with various tasks as she got older.

In 2013 Janice spoke with the executive director of the Alaska Society for the Prevention of Cruelty to Animals (Alaska SPCA) about her will. She told him she did not want her relatives to be involved or notified. She followed up on the conversation with a letter, in which she wrote, "Enclosed is a copy of My Last Will and Testament that I've been meaning to update with more specific information." Accompanying the letter was a will document, the "2007 Will." The document is a scanned copy; the original was never found.

Darryl Waters, a general contractor and real estate investor, met Janice in 2018. She owned a rental property that "was rundown and in bad shape"; people were

squatting in it and refusing to pay rent or leave.  Waters agreed to help Janice resolve the problem, eventually buying the building himself.  He and Janice became friends, and he helped her maintain her yard and occasionally brought her food.

At some point in 2019, Janice sent a letter to the Alaska Humane Society about her will.  The record does not include a copy of her letter, but the Alaska Humane Society replied, thanking her for considering it while "finalizing [her] will."

In late 2019 Janice became very ill.  Kranich visited her in the hospital and agreed to watch her cat and try to locate her next of kin.  She died on November 20 at 80 years old.  Ragni outlived her, dying in December 2021.

## B.    Proceedings

### 1.    Pretrial proceedings

After Janice's death the Kranichs entered her home looking for information on her next of kin.  In the living room they found a will file and boxes of documents, including news clippings about animals and how to make a will.  In the will file was an original will document, the "1994 Will."

The Kranichs were appointed special administrators of Janice's estate.  They petitioned for a hearing to identify her heirs, attaching a copy of the 1994 Will (though without one handwritten page).  The Alaska SPCA filed its own petition, seeking formal probate.  It attached the 2007 Will it had found in its records and asserted that it was "a valid holographic will."  It later adjusted its position to rely on both the 1994 Will and the 2007 Will, arguing that the two documents together "form[ed] one valid holographic [w]ill."

### 2.    1994 and 2007 Wills

The parties stipulated that the handwriting on both the 1994 Will and the 2007 Will belonged to Janice, and there is no dispute about what the handwriting says.  The majority of the 1994 Will — the one the Kranichs found in Janice's house — is typewritten, although it has a number of handwritten alterations and additions.  The

3                                                                          **7664**

document is not just a generic template; the typewritten portions are tailored to Janice's own circumstances. The first paragraph states:

> I, Janice V. Evensen, a legal resident of the State of Alaska, being of sound and disposing mind and memory, of legal age, and free from duress and undue influence, do make, publish and declare this instrument as and for my Last Will and Testament, intending hereby to dispose of all my worldly estate and possessions, hereby revoking and annulling any and all wills and codicils at any time heretofore made by me.

What follows are eight substantive paragraphs, called "Items."

Item I dictates how Janice's bills and expenses should be paid; Item II provides for the care of her pets; Item III sets out her wishes regarding cremation; Item IV lists the organizations that should inherit her property, including the Alaska SPCA; Item V expressly disinherits her family members, "with the exception of $1.00 to make this item legal"; Item VI appoints an executor for her estate; Item VII authorizes her executors to take certain actions; and Item VIII provides for grammatical flexibility in interpretation. Janice signed the document and dated it November 25, 1994; however, the next page, which contains signature lines for three witnesses, is not completed.

Janice edited and added to the 1994 Will by hand. Under Item I she added her individual retirement account (IRA) to the list of resources that could be used to pay off her debts. Under Item IV she crossed out the typewritten list of beneficiaries[3] and wrote "To be deleted." In Item V, which stated Janice's "express intention that [her] daughter, [her] mother, and [her] brother along with any other relatives" not benefit from her will, she inserted her daughter's name; at the end of the Item she added, "I do this without hatred. I hope to have the time to include a letter to Susan and a copy of

---

[3] The named beneficiaries in the typewritten version were "Victims for Justice, Southcentral Counseling, the Alaska SPCA, PETA and the Old English Sheepdog Rescue Fund (both in Alaska and national)."

the story of the chicken who wanted to make bread (Aesop's)."[4]  In Item VI Janice crossed out the typewritten list of executors[5] and substituted the phrase "my beneficiaries, to share and share alike."

Janice added more handwritten text on the back of the will's third page, part of which was later crossed out.  She wrote, "I have discussed this will with my friend, Joyce Congdon, . . . and she understands my intentions if I don't get to actually writing it down or taping."  She then wrote:

> Victim's for Justice [and] Southcentral counseling were in for approx 1/3 provided they provided me with attorney advice on how to handle this.  They both declined without asking how much we're talking about.  Total lack of interest.  Please inform them what they fluffed off.  I would like trusts set up with my individual mutual funds with the proceeds going to:
> > The Iditarod Trail Race
> > The Yukon Quest
> > The Old English Sheepdog National Rescue
> > Local  SPCA,  [and]  Rescue  of  animals  like  the Hagemeister Reindeer[6]

---

[4]  This is an apparent reference to a fable about a hen "whose friends declined to plant, harvest or thresh the wheat; grind or bake the flour, but were all too ready to share with her the bread that resulted." *Kroger Co. v. Johnson & Johnson*, 570 F.Supp. 1055, 1060 (S.D. Ohio 1983); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 914 F.3d 623, 648 (9th Cir. 2019) (summarizing story as "a case where latecomers attempt to divide spoils that they did not procure" (citing FLORENCE WHITE WILLIAMS, THE LITTLE RED HEN (1918))).

[5]  The identified executors in the typewritten version were her tax accountant, "Victims for Justice and Southcentral Counseling of Anchorage, Alaska."

[6]  This presumably refers to reindeer living on Hagemeister Island in Bristol Bay.  First introduced to the island in the late 1960s, the reindeer overgrazed the island's lichen and many starved.  Their plight was well publicized around the time Janice signed the 1994 Will. *See* Wesley Loy, *Reindeer Rescuers' Airlift Races Against Official 'Mercy Killing'*, WASHINGTON POST (Nov. 29, 1992),

5                                                              **7664**

> Anchorage Zoo
> Our Lady of Compassion
> Proceeds from property may be added to funds.  I have no idea as to amounts at this time.  Might as well make it all equal.

Janice signed this handwritten paragraph and dated it November 25, 1994.  A separately initialed postscript read:  "Joyce Congdon should get my computer, typewriter [and] other electronic equipment she wants for her friendship & trouble."  But both this postscript and the paragraph's first sentence, also referring to Congdon, were later crossed out, with the deletion dated six years later — October 15, 2000.[7]

The 2007 Will is the copy found in the Alaska SPCA's files.  The document's typewritten content is the same as that of the 1994 Will, but the handwritten amendments differ.  Notably, in Item IV, this version has lines through the typewritten names of all beneficiaries *except* the Alaska SPCA.  Janice signed the document and dated it August 6, 2007.  On the third page, following her signature, she handwrote the following:

> Beneficiaries will probably be:
> Alaska SPCA
> Anchorage Zoo
> (The cathouse) (I don't know the name).
> (The other dog & cat place on Arctic Blvd) (ditto)
> Maybe "the pound"
> Friends of Pets

The 2007 Will does not include the page for witness signatures.

---

https://www.washingtonpost.com/archive/politics/1992/11/29/reindeer-rescuers-airlift-races-against-official-mercy-killing/3523d214-f844-4dd5-a35b-ed66653449f3/.

[7]    A witness testified at trial that these deletions "line up with approximately the time that Mrs. Congdon moved to Florida."

### 3. Trial

The court held a bench trial to determine whether the 1994 Will, the 2007 Will, or both in combination constituted a valid holographic will. Stephen's position was that Janice died intestate, in which case Ragni would inherit her estate, which in turn would pass to Stephen as Ragni's heir. Four witnesses testified, and 24 exhibits were admitted by stipulation.

The Alaska SPCA called its executive director, Kelly Donnelly, as its first witness. She testified that she received notice of Janice's estate and possible bequest in 2020 and as a result hired counsel to represent her organization. She described the contents of the seven boxes of documents found at Janice's home: these included many pictures and articles about animals, but also documents that explained how to write a will.

Waters testified next. He explained his friendship with Janice and the events surrounding their property transaction. He testified that Janice told him Susan once tried to kill her in her sleep, and Janice's family turned on her because of Susan. He said Janice never mentioned that she had a brother. He testified that she did not show him her will, but she was "adamant" that she did not want her family to get "a dime" from her; she wanted to leave her estate to the SPCA.

Kranich testified that he grew up on Janice's street and had known her since he was a child. He began helping her with various tasks in 2002, but she was a "difficult personality." He testified that Janice "had a lot of resentment towards everybody" and that she accused her family, particularly Ragni and Susan, of abusing her. At various points she told him that she wanted her estate to go to her cat, the Humane Society, and the SPCA. But she expressed frustration that the Alaska SPCA would not help her with her will. It was Kranich's impression that Janice did not finalize a will before her death.

Janice's brother Stephen testified last. He described Janice's early life and denied that Ragni had ever abused her; he testified that everyone but Janice loved Ragni. He testified that Janice cut off contact with him in 1991 when he refused her demand that he stop talking to his mother. Stephen explained that their family had a history of mental illness; he believed that Janice suffered from delusions. He acknowledged that she loved animals, but he nonetheless was surprised that she did not want to leave her estate to her family.

At the close of the evidence the Alaska SPCA asked the court to accept the 1994 Will and the 2007 Will in combination as a valid holographic will. Stephen argued that Janice had chosen not to make a will despite knowing how to do so and had died intestate.

### 4. Superior court decision

The superior court issued a written decision concluding that the 1994 Will and the 2007 Will were insufficient to create a holographic will, whether considered separately or together. The court reasoned:

> Although the statutes authorizing holographic wills have been liberalized with the intent of giving weight to the testator's intent, they do not go so far as to suggest a printed will, which was never validly executed, can be transformed into a holographic will with the addition of a few handwritten changes. If that was the rule, any handwritten notes on a typed will could render the entire will a holographic will, which undermines the ability to determine a testator's final intent regarding the will.

The court concluded that no material portions of the will documents were in writing. It also found no testamentary intent, that is, no specific intent that one of the proffered documents was intended to control the distribution of Janice's estate following her death.

The court relied on Janice's training as a court reporter and her gathering of information about making a will to support an inference that she knew how to make

a valid will but chose not to.  The court also found it significant that Janice deleted two charitable organizations from her list of potential beneficiaries because they failed to help her with the drafting; the court reasoned that she likely intended the same for the Alaska SPCA, since it did not help her either.  The court observed that Janice never mentioned a final will to anyone, and that Kranich did not think she had one.  The court found that the only page entirely in Janice's handwriting — the back of the 1994 Will's third page — "was conditional, contemplated future action, and . . . [said] that her friend ha[d] more information on her wishes" than did the document itself.  The court found that the conditional nature of her writings indicated that she had not yet decided how her estate should be distributed upon her death.

The Alaska SPCA appeals.  It asks that both the 1994 Will and the 2007 Will be admitted to probate as one valid holographic will or as a valid will and codicil, and in the alternative that the 1994 Will alone be admitted to probate.

## III.   STANDARD OF REVIEW

"The interpretation of a statute is a legal question which we review de novo."[8]  "We review the superior court's factual findings for clear error, which exists 'only when we are left with a definite and firm conviction based on the entire record that a mistake has been made.' "[9]  To the extent that "the superior court relied . . . on the language of the will in determining the testator's intent," we review the determination de novo.[10]  However, to the extent the superior court relied "on oral

---

[8]    *In re Est. of Baker*, 386 P.3d 1228, 1231-32 (Alaska 2016) (interpreting Alaska's holographic will statute, AS 13.12.502(b)).

[9]    *Dan v. Dan*, 288 P.3d 480, 482 (Alaska 2012) (quoting *In re Protective Procs. of W.A.*, 193 P.3d 743, 748 (Alaska 2008)).

[10]   *Vukmir v. Vukmir*, 74 P.3d 918, 920 (Alaska 2003).

testimony given by witnesses seen and heard by the trial judge," we review the determination of testamentary intent for clear error.[11]

## IV.   DISCUSSION

### A.   It Was Error Not To Admit The 1994 Will To Probate As A Holographic Will.

#### 1.   The 1994 Will document is a duly executed holographic will.

The Alaska requirements for a valid will are set out in statute.  With some stated exceptions, "a will must be (1) in writing; (2) signed by the testator . . . ; and (3) signed by at least two [witnesses]."[12]  One of the stated exceptions is for a holographic will — that is, "[a] will that is handwritten by the testator."[13]  Alaska Statute 13.12.502(b) provides that "a will that does not comply with [all three of the statutory requirements] is valid as a holographic will, whether or not witnessed, if the signature and material portions of the document are in the testator's handwriting."[14]  Material

---

[11]   *In re Est. of Kraft*, 374 P.2d 413, 416 (Alaska 1962) (noting standard of review for decisions regarding testamentary capacity); *cf.  Smith v. Est. of Peters*, 741 P.2d 1172, 1174 (Alaska 1987) (explaining that whether testator intended to make specific bequest is question of fact subject to clear error review).  Other states have also recognized that whether an individual intended to create a will is a factual question subject to clear error review.  *See, e.g.*, *David Terrell Faith Prophet Ministries v. Est. of Varnum*, 681 S.W.2d 310, 313 (Ark. 1984) ("The accumulation of extrinsic evidence was the key factor in removing any doubt about the testator's intent.  No such authenticating circumstances appear in the case at bar, and without them, or ones of equal validity, we cannot say that the probate judge was clearly erroneous in his ruling."); *In re Conservatorship of H.D.K.*, 497 P.3d 1171, 1178 (Mont. 2021) (concluding that testamentary intent is question of fact subject to clear error review).

[12]   AS 13.12.502(a).

[13]   *Will-holographic will,* BLACK'S LAW DICTIONARY (11th ed. 2019).

[14]   This holographic will exception itself has an exception — "Except as provided in AS 13.06.068" — which addresses wills created in other jurisdictions and subject to other laws; it is not relevant here.

portions "are the words identifying the property and the devisee."[15] Immaterial portions, like the date or "introductory wording," need not be handwritten in order for a holographic will to be valid.[16]

When applying these statutes we keep in mind several interpretive principles. Most importantly, Alaska law aims to "discover and make effective the intent of a decedent in distribution of the decedent's property."[17] And "[w]ills should be construed to avoid intestacy whenever possible."[18] If the validity of a document purporting to be a will is contested, the will's proponents must demonstrate "prima facie proof of due execution."[19] But once they have established due execution, then the burden shifts, and the "[c]ontestants of [the] will have the burden of establishing lack of testamentary intent or capacity, undue influence, fraud, duress, mistake, or revocation."[20]

The parties do not dispute that Janice signed the 1994 Will. In deciding whether it meets the statutory requirements for a holographic will, the only remaining

---

[15] RESTATEMENT (THIRD) OF PROP.: WILLS & OTHER DONATIVE TRANSFERS § 3.2 (AM. L. INST. 1999).

[16] *In re Est. of Baker*, 386 P.3d 1228, 1233-34 (Alaska 2016) (citing UNIF. PROB. CODE § 2–502 cmt. b. (UNIF. L. COMM'N amended 2019)). "Alaska [has] adopted the Uniform Probate Code (UPC) in near-entirety." *Id.* at 1233. Immaterial portions also include provisions that, if left out, are imposed by statute anyway. Much of the typewritten boilerplate language in the 1994 and 2007 wills falls into this category: most obviously Item VII in the two proffered wills, which describes the authority and duties of Janice's executors in terms that reflect the governing statutes. *See* AS 13.16.320 ("The special administrator has the power of a personal representative under AS 13.06-AS 13.36 necessary to perform the special administrator's duties.").

[17] AS 13.06.010(b)(2).

[18] *Smith v. Est. of Peters*, 741 P.2d 1172, 1175 (Alaska 1987).

[19] AS 13.16.170.

[20] *Id.*

11                                                                    **7664**

question is whether the "material portions of the document are in [Janice's] handwriting."[21] Janice wrote on the back of the 1994 Will that she "would like trusts set up with [her] individual mutual funds with the proceeds going to" a list of mostly animal-related charities. At the end of the list she added: "Proceeds from property may be added to funds. I have no idea as to amounts at this time. Might as well make it all equal."

We conclude that Janice's handwritten additions to the 1994 Will satisfy the statutory requirement that the "material portions" — that is, "the words identifying the property and the devisee"[22] — be in her handwriting. The property is specifically described: "trusts set up with [her] individual mutual funds" with "[p]roceeds from property . . . added." The devisees are identified by name as well.[23] It was therefore error to find that the 1994 Will did not satisfy the statutory exception for a valid holographic will.

### 2. Stephen did not carry his burden of establishing Janice's lack of testamentary intent.

An apparently valid will is still subject to challenge on the ground that it does not actually reflect testamentary intent — that is, the "testator's intent that a

---

[21]    AS 13.12.502(b).

[22]    RESTATEMENT (THIRD) OF PROP.: WILLS & OTHER DONATIVE TRANSFERS § 3.2 (AM. L. INST. 1999).

[23]    We note that one beneficiary, "Rescue of animals like the Hagemeister Reindeer," is named only generally. This may mean that the executor of Janice's estate has the discretion to select a specific beneficiary consistent with her apparent intent, as this is how courts typically handle general beneficiaries in the charitable trust context. *See In re Clement Trust*, 679 N.W.2d 31, 39 (Iowa 2004) ("Because the will setting up this charitable trust identified the beneficiaries of the trust quite broadly, the trustees had the discretion to select the specific beneficiaries."). We do not decide this issue.

particular instrument function as his or her last will and testament."[24] Because the 1994 Will appears to be a valid holographic will, Stephen had the burden of demonstrating that it was not actually Janice's intent that the document take effect upon her death.[25] The superior court determined that he met this burden.

A lack of testamentary intent may be found in conditional or speculative language in the document.[26] As evidence that the 1994 Will was not a finished product, the court cited Janice's handwritten statement on the back of the third page: "[M]y friend . . . understands my intentions if I don't get to actually writing it down or taping," indicating an intent to take further action in the future. But it is undisputed that Janice crossed out this sentence in 2000, initialing the deletion; it was no longer expressive of her intent.

The court noted other evidence supporting a finding that Janice consciously chose not to finalize a will.[27] It cited letters she sent to the Alaska SPCA

---

[24] *Intent-testamentary intent,* BLACK'S LAW DICTIONARy (11th ed. 2019); *see also Est. of Smith*, 71 Cal. Rptr. 2d 424, 431 (Cal. App. 1998) (" 'Testamentary intent' . . . does not refer to the testator's intentions regarding particular dispositions of property. It means the testator's general intent to make a revocable disposition of his or her property, effective on the testator's death."); *Irving v. Divito*, 807 S.E.2d 741, 745 (Va. 2017) ("Testamentary intent . . . means that the writing offered for probate must have been executed by the testator with the intent that such writing take effect as his last will." (omission in original) (quoting *Thompkins v. Randall*, 150 S.E. 249, 251 (Va. 1929))).

[25] AS 13.16.170.

[26] *In re Est. of Tiedeman*, 912 N.W.2d 816, 825-26 (Neb. App. 2018).

[27] Some states do not allow extrinsic evidence of testamentary intent unless the document is ambiguous. *See, e.g.*, *In re Est. of Ostby,* 479 N.W.2d 866, 871 (N.D. 1992) ("Unless a duly executed will is ambiguous, the testamentary intent is derived from the will itself, not from extrinsic evidence.") But "California law allows the admission of extrinsic evidence to establish that a will is ambiguous and to clarify ambiguities in a will." *In re Est. of Duke*, 352 P.3d 863, 867 (Cal. 2015); *see also* UNIF.

and the Alaska Humane Society indicating that she "was still working to finalize her will," and that "her intent in sending a copy to the [Alaska SPCA] was more of a working draft . . . than a final will."  But Janice's letter to the Alaska SPCA can just as easily be read as confirming that she had a will; she explained that she was enclosing a copy of her "Last Will and Testament that [she had] been meaning to update with more specific information," referring again to "this update" later in the letter.  Her use of the term "update" implies that a valid will was already in place, though perhaps needing modification.  Janice's letter to the Humane Society is not in evidence, only the Humane Society's response, which closes with the words, "We . . . trust that you will [c]onsider us in finalizing your will."   Whether this accurately reflects the language of Janice's own letter can only be guessed at; it is, at best, very weak evidence of her intent.

The court also cited evidence that Janice had worked as a court reporter and that she had collected a number of articles about estate planning and will drafting, supporting a finding that she "knew exactly how to make a valid will and she chose not to finalize a valid handwritten will or finalize a valid typewritten will by having the will witnessed."   The significance of Janice's court reporter career is unclear from the record, but there is no evidence that she retained any knowledge of wills and estates beyond that of any layperson.[28]  Nor is there evidence that she read the clippings she

---

PROB. CODE § 2–502 cmt. c (UNIF. L. COMM'N, amended 2019) ("[T]estamentary intent can be shown by extrinsic evidence, including for holographic wills the printed, typed, or stamped portions of the form or document.").  Here, neither party challenges the consideration of extrinsic evidence, so we do not decide the extent to which Alaska law allows it.

[28]   Stephen testified about Janice's training as a court reporter before she and Susan moved to Alaska in the early 1960s, and Stephen's counsel, citing Waters' testimony, asserted in closing argument that Janice "was a court reporter during her lifetime."  But the only evidence of the duration of Janice's court reporting career is a letter she wrote in 1973 — submitted as part of a joint trial exhibit — in which she said

collected about drafting wills, which, as the court acknowledged, were not "perfect statement[s] of the law in the State of Alaska regarding the validity of wills."

The superior court also cited Janice's "pattern of behavior . . . of wanting a charitable organization to provide her with legal advice to finalize her will" and, when that advice was not forthcoming, of "eliminat[ing] them as beneficiaries." The court inferred that Janice likely intended to do that with the Alaska SPCA as well, meaning that the handwritten beneficiary list in the 1994 Will did not reflect her evolving intent. But both Kranich and Waters testified that Janice told them of her desire to leave property to the Alaska SPCA; Waters did not meet Janice until 2018, five years after the Alaska SPCA's failure to respond to her request for its help, and Kranich placed Janice's comments in the same time frame. Although eliminating the Alaska SPCA from the list of beneficiaries would have been consistent with Janice's actions toward other charitable organizations, she did not do so.

Other extrinsic evidence supports a finding that Janice intended that her estate be distributed in accordance with the terms of the 1994 Will unless and until she changed it. The typewritten portions of the document reflect her own particular circumstances; she deliberately created a "Last Will and Testament of Janice V. Evensen" that devised her estate to particular charitable organizations and explicitly disinherited her daughter, her mother, her brother, and "any other relatives." She signed and dated the 1994 Will. The language remaining after her 2000 deletions is not equivocal: "I would like trusts set up . . . with the proceeds going to . . . ." And more indicative of her intent that the 1994 Will have lasting impact is the fact that over the next 13 years she initialed and (mostly) dated changes she made to the typewritten text

---

she "stopped court reporting about eight to ten years ago," i.e., by the mid-1960s, and had "been working as a secretary."

and the handwritten addition, dating the 2000 deletion of references to Joyce Congdon and dating the change to the named executors seven years later.

The fact that Janice repeatedly returned to the same signed document, revised it, and dated and initialed her revisions over the course of 13 years is strong evidence that that document — the 1994 Will — reflected her intentions as to what would happen upon her death.

The goal of Alaska's probate statutes is to "discover and make effective the intent of a decedent in distribution of the decedent's property."[29] Two very clear threads run through both the written record and the testimony of Janice's neighbors: She did not want her relatives to see "a dime" of her estate and she wanted her estate to go primarily to animal welfare organizations. A finding of intestacy would upend her clearly expressed desires. The 1994 Will is signed, its material portions are in Janice's handwriting, and it reflects what is known of Janice's testamentary intent. Because the 1994 Will contains all the elements of a valid holographic will and Stephen did not carry his burden to prove that Janice lacked testamentary intent, we conclude that the 1994 Will is a valid holographic will.

## B. It Was Not Error To Reject The 2007 Will As Invalid.

The superior court also concluded that the 2007 Will — the copy on which Janice had deleted all beneficiaries except the Alaska SPCA from the typewritten text — was presumed to have been revoked, since no original of it was ever found. We agree that the governing law compelled this conclusion. If the original of a will document cannot be found, there is a rebuttable presumption that the testator revoked it.[30] The party attempting to rebut the presumption must prove by clear and convincing

---

[29] AS 13.06.010(b)(2).

[30] *Dan v. Dan*, 288 P.3d 480, 484 (Alaska 2012) (citing RESTATEMENT (THIRD) OF PROP.: WILLS AND OTHER DONATIVE TRANSFERS § 4.1 cmt. j (AM. L. INST. 1999)).

evidence that the original was merely lost.[31]  "[T]hose who attempt to set up a lost holographic will are met by an almost insurmountable barrier when called upon to produce strict and complete proof sufficient to establish legal execution and contents of the will."[32]

Arguing against revocation of the 2007 Will, the Alaska SPCA points to Janice's statements to Kranich and Waters about her wish to leave her estate to the Alaska SPCA, her 2013 letter to the organization, and her conversation with its executive director.  It also relies on the fact that Janice made handwritten modifications to both the 1994 Will and the 2007 Will on the same date, indicating an intent that they be considered together.  But Janice's repeated references to the Alaska SPCA do not necessarily mean she intended the 2007 Will to replace the 1994 Will, which included the "Local SPCA" among its listed beneficiaries.  It makes sense that she would highlight the Alaska SPCA's status as an intended beneficiary in the copy she sent to that organization seeking its help with her estate planning.  And the fact that Janice modified both will documents simultaneously supports a finding that she intended the earlier version to remain in effect even as she considered an "updated" version.  The Alaska SPCA did not provide clear and convincing evidence to rebut the presumption of revocation.

Even if the Alaska SPCA had rebutted the presumption of revocation, the 2007 Will still would not satisfy either the statutory requirements for a valid will (being unwitnessed)[33] or the statutory exception for a holographic will (lacking the 1994 Will's

---

[31]    *Id.*

[32]    *Id.* (quoting *Sanders v. McClanahan*, 442 S.W.2d 664, 667 (Tenn. App. 1969)).

[33]    *See* AS 13.12.502(a)(3).

handwritten material portions).[34] The Alaska SPCA admits this, but it argues that the 1994 Will and the 2007 Will together create a valid holographic will or in the alternative a valid will and codicil.[35] But there is no support for the proposition that a valid will can be modified by its integration with a different will that has been presumptively revoked. And in order to be a valid codicil, a document must satisfy the requirements of a valid will.[36] We conclude, therefore, that the superior court did not clearly err when it found that the Alaska SPCA had failed to rebut the presumption that the 2007 Will was not a valid will.

## V. CONCLUSION

We REVERSE the superior court decision that the 1994 Will was not valid under Alaska law and REMAND for further proceedings consistent with this opinion.

---

[34] *See* AS 13.12.502(b). We observe that the handwritten list of beneficiaries added to the 2007 Will is phrased conditionally ("Beneficiaries will probably be . . .") as opposed to that in the 1994 Will, in which the conditional words initially included in the handwritten portion were later deleted.

[35] A codicil is "[a] supplement or addition to a will, not necessarily disposing of the entire estate but modifying, explaining, or otherwise qualifying the will in some way." *Codicil,* BLACK'S LAW DICTIONARY (11th ed. 2019).

[36] *See* AS 13.06.050(62) (providing that " 'will' includes a codicil").